1                      IN THE UNITED STATES DISTRICT COURT

2                      IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

    CLOUDING IP, LLC,                     :
4                                         :        CIVIL ACTION
                 Plaintiff,               :
5        v                                :
                                          :
6    ORACLE CORPORATION,                  :
                                          :        NO. 12-642-LPS
7                Defendant.               :
                                  - - -

8
                             Wilmington, Delaware
9                         Friday, January 25, 2013
                           *Oral Argument Hearing*

10
                                  - - -

11
     BEFORE:          HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

12
     APPEARANCES:                 - - -

13

14              BAYARD, P.A.
                BY:  STEPHEN B. BRAUERMAN, ESQ.,
15                   RICHARD D. KIRK, ESQ., and
                     VANESSA R. TIRADENTES, ESQ.

16
                         Counsel for Clouding IP, LLC
17

18              RICHARDS LAYTON & FINGER, P.A.
                BY:  FREDERICK L. COTTRELL, III, ESQ.
19
                     and
20
                KASOWITZ BENSON TORRES & FRIEDMAN, LLP
21              BY:  DOUGLAS E. LUMISH, ESQ., and
                     GABRIEL S. GROSS, ESQ.
22                   (Redwood Shores, California)

23                       Counsel for Oracle Corporation

24

25                                   Brian P. Gaffigan
                                     Registered Merit Reporter

```
 1                              - oOo -

 2                    P R O C E E D I N G S

 3              (REPORTER'S NOTE:  The following oral argument

 4   hearing was held in open court, beginning at 10:18 a.m.)

 5              THE COURT:  Good morning.

 6              (The attorneys respond, "Good morning, Your

 7   Honor.")

 8              THE COURT:  Let's have you begin by putting your

 9   appearances on the record for me, please.

10              MR. COTTRELL:  Good morning, Your Honor.

11   Fred Cottrell from Richards Layton for Oracle.  With me

12   at counsel table from the Kasowitz Benson firm, Doug

13   Lumish.

14              MR. LUMISH:  Good morning.

15              MR. COTTRELL:  And Gabe Gross.

16              MR. GROSS:  Good morning.

17              MR. COTTRELL:  Mr. Lumish and Mr. Gross are

18   going to break up, each take one of the two motions.

19              THE COURT:  Okay.  That's fine.  Good morning to

20   you.

21              MR. BRAUERMAN:  Good morning, Your Honor.  Steve

22   Brauerman from Bayard.  I'm joined at counsel table by

23   Vanessa Tiradentes from Bayard on behalf of Clouding LP,

24   LLC.

25              MS. TIRADENTES:  Good morning, Your Honor.
```

1           THE COURT:  Good morning.

2           Well, welcome.  We are here for argument on two

3    motions filed by Oracle, the motion to dismiss and a motion

4    for a stay.

5           The way I intend to proceed is to have the

6    argument on the motion to dismiss first, then we'll go back

7    and forth on that.  Then we'll have the argument on the

8    motion to stay separate from that.

9           I think I did indicate you would have up to

10   two hours per side.  We will not be here for four hours

11   altogether.  I don't have a set time limit but I don't

12   think anybody will need nearly that much time.

13          So with that, let me turn the over to whoever is

14   arguing the motion to dismiss.

15          MR. GROSS:  Good morning, Your Honor.  Gabriel

16   Gross on behalf of Oracle.

17          Oracle has moved to dismiss all of Clouding's

18   infringement allegations.  They break down into three types,

19   and I would like to address the three categories that are

20   the subject of Oracle's motion.

21          Clouding has alleged that Oracle directly

22   infringes its 11 patents in suit.  It alleges that Oracle

23   has indirectly, through inducement, infringed those patents

24   in suit.  It's alleged that the infringement has been

25   willful.  And, the willfulness claims and the indirect

1    infringement claims both require a common element of intent

2    and knowledge specifically about the patents in suit.

3              With that commonality, I'd like to address the

4    inducement and willfulness claims first.

5              There is no dispute between the sides about

6    the legal standards for claims for induced infringement, and

7    that they require three things:

8              An underlying predicate of indirect

9    infringement, which I will address in a moment.

10             Knowledge of the patent.  And,

11             A specific intent to encourage infringement of

12   the patents by those who are induced allegedly in this case

13   by Oracle.

14             Now, as to the knowledge of the patents in suit

15   element, Clouding has admitted in its briefing that it

16   doesn't have facts that it could plead alleging Oracle had

17   knowledge of the patents before its suit was filed.  Pages

18   11 and 14 of the answering brief in fact contain those

19   admissions.  But the language of the complaint itself does

20   in fact allege inducement pre-suit.  The complaint in seven

21   of the 11 claims alleges that Oracle has, and continues to

22   induce.

23             THE COURT:  I understand the argument that you

24   are entitled to at least some relief to clarify, to make the

25   pleading consistent with what the plaintiff had represented

1    in arguing on these motions.  Let's put that aside.  Move on

2    to what further relief you are entitled to.

3                MR. GROSS:  I will, Your Honor.

4                So putting the knowledge of the patents pre-suit

5    aside, Clouding has also not pled facts but has only

6    asserted conclusions that Oracle has had the specific intent

7    to induce others to infringe.

8                Specific knowing intent is what is required

9    under the law.  That is the *Bill of Lading* case.  It's the

10   *DSU Medical* case.  And I don't think there is any dispute

11   that that is a required element of inducement.

12               But there are no facts alleged in the complaint

13   that make a plausible showing or any showing that Oracle

14   is specifically encouraging others to infringe.  There are

15   conclusions to this effect that are generically pleaded

16   and are not unique for any particular patent, are not unique

17   for any particular accused technology, and as this Court

18   in fact has held, simply alleging that someone sells a

19   product or offers a service that is alleged to infringe

20   doesn't satisfy this required element for valid claims of

21   inducement.

22               One of the cases that Clouding itself relies on,

23   the *MONEC* case, in fact, makes this very clear.  It was a

24   magistrate's approval that Your Honor then adopted entirely.

25   In the *MONEC* case, this Court held that allegations of

1   marketing activities of the defendants do not, on their own,

2   demonstrate that defendants knew that their activities were

3   infringing or that they had the required specific intent to

4   induce infringement.

5            So the allegations are generic.  They're not

6   fact specific.  They are simply labels and conclusions.

7   And the law is very clear from the Supreme Court that a

8   formulaic recitation of elements of claims doesn't satisfy

9   Rule 8.  It doesn't create a valid claim.

10           THE COURT:  Is there a reasonable inference that

11  you all put a product or service out in the market and you

12  intend for it to be used by endusers consistent with what

13  that product or service is for?

14           MR. GROSS:  I think it is a reasonable inference

15  that Oracle intended its product to be bought by customers,

16  but whether it had specific intent to induce customers to

17  infringe somebody else's patent is the relevant question,

18  and I don't believe that is a reasonable inference from such

19  generic and factless pleading.

20           THE COURT:  If I were to agree with you on that,

21  should I give the plaintiff the opportunity to amend its

22  complaint again on indirect infringement?

23           MR. GROSS:  In my experience, Your Honor, more

24  often than not plaintiffs are given the opportunity to

25  amend.  We do think that they've had ample time, ample

1    opportunity.  They have amended once, as a matter of fact,

2    and there is plenty of information available to them with

3    which they could state a claim.  I believe they should.  We

4    would request that Your Honor grant the motion to dismiss

5    without leave to amend because we think there has been

6    plenty of time, plenty of opportunity for the plaintiff to

7    state a case if it had a basis to do so.

8                I'll move on, Your Honor, now to the willfulness

9    claims.

10                Of the 11 patents in suit, Clouding has alleged

11   willful infringement of nine of them.  The sequence went

12   like this:  When Clouding filed its original claim, there

13   were only nine patents in suit.  There were no willfulness

14   allegations in that original complaint.  I believe it was

15   about four months later that Clouding amended its pleading.

16   When it did so, it added two new patents to the case.  And

17   for the nine that had been in the case all along, it added

18   willfulness allegations.

19                But in the amended complaint, for the nine

20   patents in which willfulness was later alleged, there were

21   no other facts added to support the claim for willfulness

22   but for the fact that, according to Clouding, Oracle had

23   knowledge of the patents in suit as of the filing of the

24   original complaint.  So the willfulness allegations are

25   based on one fact, and that's knowledge of nine of the 11

1    patents in suit after the original complaint was filed.

2           Now, here, again, I don't believe there is a

3    dispute about the relevant legal standard.  It's the *In Re:*

4    *Seagate* case from the Federal Circuit in 2007 applies, and

5    the standard is that willfulness claims require proof that

6    defendants act despite an objectively high likelihood of

7    infringing a valid patent.  This is also equated to the

8    objective recklessness standard the Court used.  And,

9           Willfulness allegations that are based on

10   post-suit conduct under this standard are generally inadequate

11   to state valid claims upon which relief could be granted.

12          This Court addressed the same issue recently.

13   It was last summer in the July in the *SoftView* v *Apple* case.

14   That the Court found that under *Seagate* -- *well, Seagate*

15   itself implies willfulness -- excuse me -- that willful

16   infringement allegations based on post-filing conduct are

17   inadequate.

18          That's what we have here.  We have nine patents

19   in sit Clouding alleges to have willfully infringed based on

20   nothing more than postfiling conduct, postfiling awareness

21   of those patents.

22          The briefing on this particular point is very

23   interesting.  I think it's worth spending a moment on.  In

24   its motion to dismiss, Oracle made the point that the

25   objective recklessness standard under *Seagate* applies to

1    all patentees asserting infringement claims.  It applies to

2    Clouding IP in this case.  The postfiling conduct generally

3    is not enough to state a claim for valid willfulness, or

4    valid willful infringement claims, so the claim should be

5    dismissed.

6               In its answering brief, Clouding IP argued

7    that it didn't have to seek a preliminary injunction.  That

8    wasn't the argument that Oracle based its motion on.  It

9    still isn't.  And it's, I submit, a distraction and not

10   something the Court needs to spend its time on here.

11              Whether a non-practicing entity here like

12   Clouding may or should or shouldn't seek injunctive relief

13   is not really the relevant issue here.  The relevant issue

14   is whether, in its complaint, Clouding as a patent owner has

15   alleged facts that under *Twombly* and *Iqbal* plausibly show

16   that Oracle acted in an objectively reckless manner.  It

17   hasn't done that.  There are no facts in the complaint to

18   make even close to such a showing.

19              THE COURT:  But why --

20              MR. GROSS:  All there is, is this post-filing

21   awareness.

22              THE COURT:  I'd like to agree with you that I

23   don't have to be worried about the perhaps larger issue as

24   to what is an NPE to do in this circumstance.  We'll come to

25   that.

1          Why is it not plausible to allege that you have

2     knowledge of the patent from the filing of the complaint

3     and it's either pled or a reasonable inference that you

4     continue to do what you have been doing prior to the

5     complaint.  Therefore, since we're only on a pleading stage,

6     I have adequately pled that you are, today, willfully

7     infringing my patent.  How do I say that that is not

8     plausible?

9          MR. GROSS:  The reason it's not plausible, Your

10    Honor, is because, like Clouding's claims for inducement,

11    the way it has pled its claims for willfulness is devoid of

12    any specific facts.  The one fact is that there is awareness

13    of the patent in suit, but there is no fact pled to show

14    that there is an objectively high likelihood that the

15    patents have been infringed, that they're valid.  In fact,

16    the state of affairs is that there is a significant body of

17    evidence to show why these patents are invalid which is now

18    before the Patent Office, which we will get to later in the

19    hearing, but Clouding offers nothing more than awareness of

20    the patents.

21          THE COURT:  Where is it that you are deriving

22    those obligations at the pleading stage to specifically

23    allege facts of the objectively high likelihood of

24    infringement of a valid patent?

25          MR. GROSS:  I think the Court can find guidance

1     in recent case law also out of this jurisdiction.  The Court

2     in *Aeritas* was faced with an almost identical situation

3     where there was an original complaint, an amended complaint

4     which had willfulness allegations in it based on the

5     awareness of the patents as of the filing of the original

6     complaint, but the only fact that was pled, like here, was

7     awareness of the postfiling -- excuse me -- postfiling

8     awareness of the complaint.  And the Court there looked at

9     *Seagate*, looked at the undisputed principle that willfulness

10    is generally based on postfiling conduct, not simply

11    awareness but actual conduct, and in that case said it

12    wasn't inclined to allow mere notice of a charge of

13    infringement that can be gleaned from the service of a

14    complaint to pass muster under Rule 8.

15              Mere notice that somebody claims you are

16    infringing does not, in and of itself, create a objectively

17    high likelihood that the defendant is infringing a valid

18    patent.  And that is all we have here is a mere notice.  No

19    other factual allegations that are specific to this

20    objectively high likelihood the plaintiff needs to show in

21    its complaint.  And mere notice, we submit under *Aeritas* and

22    under *Seagate* isn't sufficient to state a valid claim.

23              THE COURT:  Let's come to what I think you

24    characterized it as either expressly or implicitly as a

25    diversion; this question as to really whether, under

1    *Seagate*, the at least suggestion that you need to seek

2    preliminary injunctive relief, if you are relying only on

3    the postfiling conduct for notice and intent, as to whether

4    that applies to a non-practicing entity when, under *eBay,*

5    it seems unlikely that a non-practicing entity is going to

6    obtain preliminary injunctive relief.

7            It seemed that your position or at least the

8    logical conclusion of your position was an NPE in that

9    situation does have to seek preliminary injunctive relief

10   but they're not going to get it.  So if that is your

11   position, isn't that, for lack of a better word, unfairly

12   penalizing an NPE and unfairly allowing your client to

13   willfully infringe without any risk of being liable for

14   enhanced damages?

15            MR. GROSS:  I don't believe that is the case,

16   Your Honor.  Here is why.  Proceeding with its business

17   lawfully during the pendency of this litigation is not

18   entirely without risk for Oracle.  The patents are valid.

19   If they are found to be infringed, Oracle would be held

20   accountable for any infringement that occurs since it had

21   awareness of the patents in suit.  It's certainly not

22   without risk.  And *Seagate*, in its discussion of what

23   remedies are available to patentees for willful

24   infringement, should be considered in just that context.

25   The context of remedies.

1                    If there is evidence and pleadings showing

2      pre-suit willfulness, then that can be accounted for during

3      the litigation.  And the statutes, the patent code provides

4      particular remedies for willful infringement that is found

5      to have occurred.  But if the only evidence of willfulness

6      is as of the filing of the complaint and going forward into

7      the future, generally, seeking a preliminary injunction

8      should be enough.

9                    Now, non-practicing entities, because they're

10     not competing in the market, and because they are not losing

11     market share, that sort of thing that competitors may have

12     to deal with, may not be in the exact same situation to make

13     a showing under *eBay* that they're entitled to preliminary

14     injunction relief, but that does not leave them without a

15     remedy.  Patent holders have a remedy.

16                   THE COURT:  Where is the remedy of enhanced

17     damages in that scenario?  How could they obtain enhanced

18     damages?

19                   MR. GROSS:  In the hypothetical that Clouding or

20     another non-practicing entity makes a showing that there was

21     an objectively high likelihood of infringement such as

22     evidence that developed after the filing of the complaint,

23     in that case, a jury could find willful infringement.  But

24     mere notice of a patent, in and of itself, isn't evidence

25     that could support an inference of willfulness.  It's just

1      awareness of a fact if other facts come to light after the

2      filing of the complaint to indicate willfulness.

3               THE COURT:  So you're suggesting I could allow

4      them in that circumstance to amend the complaint again

5      during the pendency of the suit.  Under your reasoning, I

6      would have to dismiss the willful infringement claim now,

7      but assuming Oracle is still in the case, they come across

8      some other evidence of willful infringement later in the

9      case.  At that time, that later time in the case, I could

10     and should, I guess, allow them to amend to add back willful

11     infringement.

12              MR. GROSS:  Well, I think that is the correct

13     approach, Your Honor.  The claim for willfulness should be

14     dismissed now because there is no facts to plausibly suggest

15     it.  But if, as the litigation unfolds, evidence comes up,

16     some sort of smoking gun of sorts to show that after the

17     suit was filed, Oracle really did have an objectively high

18     likelihood of infringing a valid patent or prove to be

19     acting in a reckless manner, which we certainly don't

20     expect to occur, if that type of evidence was available to

21     Clouding, that it could make a complaint that actually

22     alleged it, based on facts, not conclusions, then an

23     amendment might be appropriate.  But as it's pled right now,

24     we don't believe there is a valid claim for relief.

25              THE COURT:  Did you want to talk about the

1    direct infringement issues?

2              MR. GROSS:  Yes.  Thank you, Your Honor.

3              In Oracle's motion to dismiss the claims for

4    direct infringement, I think it makes sense to treat the

5    claims in two groups.  There is a series of counts that

6    Clouding has pled that simply don't identify accused

7    products.  These are counts, 1, 2, 4, and 9.  And these

8    don't even achieve -- these claims that Clouding has pleaded

9    don't achieve the specificity that would even be required by

10   Form 18 in the federal rules.

11             I'll go through each one briefly but I think

12   it's worth discussing the form for a moment because the

13   form contemplates a patentee who pleads that it owns an

14   invention on a particular subject matter, the example in

15   the form as an invention is an electric motor, and then

16   goes and points out that the defendant also makes or uses

17   or sells that patented electric motor, and that suffices

18   under Form 18.

19             I won't reiterate here Oracle's criticism, not

20   just Oracle's but other Judges and courts criticism of the

21   form, but that is the example the form uses:  patented

22   electric motor and the defendant's infringing electric

23   motor.

24             In counts 1, 2, 4 and 9, Clouding hasn't even

25   done the equivalent of identifying an electric motor.  1 and

1    2 allege infringement of the '449 and '014 patents.  And in

2    the complaint, the amended complaint, Clouding alleges that

3    something it calls Oracle 11g Release 2 infringes, and that

4    simply is not a product.  It doesn't exist.  There are

5    products that Oracle has made that have the 11g product in

6    it.  A diverse set of products.  Some have various releases,

7    including Release 2, but Oracle hasn't alleged that those

8    infringe.

9            For example, there is a product called Oracle

10   Database that has an 11g and Release 2.  Excuse me.

11   Clouding hasn't accused it of infringing.  There is one

12   called Oracle's Fusion Middleware that has a release, but

13   Clouding hasn't accused of that of infringing.

14           So identifying this is nomenclature of 11g

15   and Release 2 doesn't even get Clouding of the level of

16   specificity that the form would require by pointing to an

17   electric motor.  And this is important because Oracle, like

18   any responsible litigant accused of patent infringement,

19   needs at the outset of the case to have sufficient notice

20   of what it is being accused of doing wrong so it can prepare

21   itself for the case:  identify the evidence, identify the

22   relevant people, and institute a document hold to make sure

23   evidence is preserved.  And Oracle is left in a position for

24   claims 1 and 2, 4, 9, all of them, frankly, that it doesn't

25   know what Clouding is accusing of infringement.  And that

1   makes it inordinately burdensome and difficult to identify

2   which of the hundreds or thousands of people in R&D may need

3   to preserve documents, what evidence it needs to collect,

4   how to answer the complaint, how to work with the plaintiff

5   to prepare a discovery plan.  It's a significant problem

6   when there is insufficient notice in the pleading like there

7   is with claims 1 and 2.

8          Claim 4 --

9          THE COURT:  I know your colleague is going to

10  talk about the motion to stay, but my question for you on

11  this motion is somehow, somebody or some group of people

12  at Oracle were able to figure out what you think are the

13  approximately one-third of potential asserted claims

14  sufficient but not so that you knew or concluded to ask the

15  PTO for the inter partes review for just that subset of

16  claims.  If you were able to figure that much out, how can

17  I conclude that you don't have the notice required as a

18  general matter under the pleadings?

19         MR. GROSS:  Well, they're separate issues, your

20  Honor.  Under Rule 8 and Form 18, and *Iqbal* and *Twombly*, the

21  pleading standard is put in place to give defendants fair

22  notice of the claims against them and the grounds for those

23  claims.

24         To file its inter partes review petitions,

25  Oracle did its level best from the complaints that are

1    on file and from its communications with Clouding to try

2    to ascertain what is most likely to be at issue in this

3    lawsuit and to put those claims in front of the Patent

4    Office.  They're different exercises, and there is a legal

5    standard that plaintiffs have to meet in order to state

6    viable claims for relief in a federal court.  And Oracle,

7    in an effort to streamline issues of invalidity, tried to

8    put the claims it thinks are likely at issue before the

9    Patent Office, but the pleading standards, it's important

10   to remember, deals with what products are accused of

11   infringement.

12           At the Patent Office, that is not at issue.  The

13   issue there is whether the claims that have been issued are

14   in fact valid over the prior art.  And that was what Oracle

15   needed to put in front of the Patent Office.

16           So the motion to dismiss the direct infringement

17   claim goes not just only to what claims are at issue but

18   the allegation of infringement itself, and what conduct by

19   Oracle or what products by Oracle have been accused of

20   infringement, which Oracle can't glean from this complaint.

21           In another example, we're discussing claim 4

22   where Clouding has simply not identified even the name of an

23   accused product.

24           THE COURT:  By claim 4, you mean count 4 in the

25   complaint?

1                    MR. GROSS:  Thank you.  That is what I meant.

2                    Count 4 pertains to the Clouding '637 patent.

3          What it actually accused of infringing is some set of

4          unnamed products and/or services, it's not clear which, that

5          are configurable through a product of Oracle's called VN

6          Manager.  So Oracle has an idea that VN Manager may be

7          implicated but VN Manager has not been accused of infringing

8          these products or perhaps services.  All that is accused

9          of infringing, and that simply is not valid notice.  And

10         this conditional language, is it a product that infringes?

11         Is it a service that infringes?  There is a problem.  The

12         patents-in-suit have method claims, they have product

13         claims.  They could apply to products and/or service.

14                    This Court in its decision in *Eidos* has

15         dismissed claims under Rule 12(b)(6) for exactly this

16         problem:  having conditional qualified language that

17         phrases the claims of infringement in exemplary terms or

18         in conditional terms that doesn't fairly give a defendant

19         notice of what is actually being accused of infringement,

20         behavior or products, whatever it may be.  And this is a

21         problem that pervades all of Clouding IP's direct

22         infringement claims against Oracle.

23                    Count 9 in the amended complaint relates to the

24         '607 patent.  In that one, Clouding points out something it

25         calls Oracle's cloud computing service, and it capitalizes

1    that in a way that perhaps inadvertently implies there is

2    an actual product with that name.  There isn't.  And it's

3    entirely unclear what Oracle may be doing or selling or

4    making that could be infringing the '607 patent.  And,

5           Again, it leaves Oracle in a very difficult

6    position to litigate this case as it needs to do in a way

7    that is not horribly burdensome by being so overly broad and

8    encompassing that it would create unrealistic expectations

9    for Oracle to collect evidence from giants at the company

10   that is not really at issue.

11          This is not how notice pleading and Rule 8 is

12   meant to work.  That the plaintiff gets to accuse businesses

13   on concepts of infringing and then take discovery into all

14   of that so that it can figure out precisely how to allege

15   that it actually has infringement.

16          I would submit that Clouding is putting the

17   cart before the horse here in violation of Supreme Court

18   precedent in trying to unlock discovery and get discovery

19   in order to state its claim when it has an obligation to

20   state its claim sufficiently first and then proceed with

21   discovery.

22          The reality is that there is an enormous amount

23   of information about Oracle business and its products and

24   service available publicly at Oracle's website.  And the way

25   it's covered in the press provides an enormous amount of

1    information that Clouding has had access to for some time;

2    and even with it, it still couldn't state viable claims for

3    relief for directly infringing its patent.

4              There is white papers.  There is user manuals.

5    There is guides available to it.  And Clouding still, in

6    light of that all that information being available, has not

7    been able to state sufficient claims for relief that even

8    meet the Form 18 standard.

9              Your Honor, I'm happy to go through all 11

10   claims, but what I would like to do is offer to submit

11   the rest of the motion on briefs and save some time for

12   rebuttal.

13             THE COURT:  That is fine.  Let me ask you a few

14   more questions.

15             MR. GROSS:  Yes, sir.

16             THE COURT:  I don't think it's necessary to go

17   through all 11 counts.

18             Do you agree at this point that Form 18 is

19   sufficient and your argument is really just that plaintiff

20   has not complied with Form 18?

21             MR. GROSS:  I believe that Form 18 is still the

22   bar, but I think it has to be considered in the context of

23   *Iqbal* and *Twombly*.  And the Court need not and doesn't have

24   to separate the two.

25             There has been some suggestion in the briefing,

1    perhaps in some of the case law that the facial plausibility

2    standard established by the Supreme Court in *Iqbal* and

3    *Twombly* doesn't apply to claims for direct infringement,

4    Form 18 is the only thing that applies, but I don't think

5    they're mutually exclusive.  Form 18 requires a plaintiff

6    to specify the patented invention and then find what the

7    defendants are doing that equates to that patented

8    invention, and accuse it of infringing.  The electric motor

9    example is what it uses.

10           Properly applied, that form should, in a context

11   specific inquiry that the Third Circuit requires and the

12   Supreme Court requires, under the current state of the law,

13   should suffice to state a valid claim.  And,

14           You are correct, Your Honor.  We don't believe

15   that Clouding has achieved even the specificity that the form

16   requires.  I think it's worth mentioning that Form 18 is only

17   a form for direct infringement and has no applicability to

18   claims for induced infringement, contributory infringement,

19   willful infringement.  And I don't believe there is any

20   dispute under the law that the facial plausibility standard

21   is what applies to those types of infringement.

22           THE COURT:  Do you agree that Form 18 can be

23   satisfied for identification of general categories of

24   infringing products?

25           MR. GROSS:  Yes, but, again, not without the

1    proper context.  Here is what I mean by that.  Clouding, in

2    its complaint, has referred to broad fields of technology

3    and said that Oracle's products or conduct in these fields

4    of technology directly infringes its patent.

5            That is not a general category of the products.

6    Simply using terms like 11g and Release 2 picks some

7    nomenclature out of Oracle's vast product sweep but it doesn't

8    identify a category of products.  So while a general category

9    of products may suffice to satisfy Form 18, Clouding hasn't

10   done that.

11           THE COURT:  I know you haven't made the argument

12   here this morning but it's in your brief specifically at the

13   opening brief on page 16, but I will read to you the quote

14   I'm concerned with.

15           You make an argument that "the patented

16   invention is narrower than Clouding has pleaded."  And when

17   I hear that, I get a little concerned that you are inviting

18   me to essentially construe the claims and conduct a Markman

19   all the way up at the beginning of the case in reviewing the

20   motion to dismiss.  Am I right to have that concern?

21           MR. GROSS:  If we left Your Honor with that

22   impression, that is incorrect, and I'm happy to dispel it

23   right now.

24           This pleading stage is not where a claim should

25   be construed, and it's not what we meant to imply to the

1   Court.  But the form, even Form 18 requires a description

2   of the patented invention.  And for Clouding IP to say, for

3   example, it owns a patent in remote data access, which is a

4   term it used to describe the patents in counts 1 and 2,

5   that is a broad field of technology, and there is really no

6   question that that is broader than what is covered by the

7   patent.  And I don't think claim construction is required

8   to reach that conclusion accurately.  Those patents claim

9   specific things.  Remote data access just isn't one of them,

10  no matter how they could possibly be construed.

11          So when Clouding refers to something that is

12  very, very broad, field of science, computer science, or a

13  field of technology, and then tries to equate that with

14  what Oracle is doing in the market, that doesn't satisfy the

15  Form 18 connection between a patented electric motor and

16  infringing electric motor that the defendant is making or

17  using itself.

18              THE COURT:  Okay.  Thank you very much.

19              MR. GROSS:  Thank you, Your Honor.

20              THE COURT:  We'll hear from the plaintiff.

21              MR. BRAUERMAN:  Thank you, Your Honor.  Steve

22  Brauerman from Bayard on behalf of plaintiff Clouding IP,

23  LLC.

24              Your Honor, I want to begin with Mr. Gross's

25  last point.  That is, our characterization of the patented

1    technology by referring specifically to remote data access

2    was somehow improper.

3                     First, I think it's very clear that the Court need

4    not, and should not, at this stage construe the claims.  And

5    the Clouding description, the sufficiency or Clouding's view

6    of this technology is not what the Court judges on a motion

7    to dismiss.  Rather, all Form 18 requires is that Clouding

8    provide that.  Oracle concedes that such description is there

9    even if Oracle takes issue with Clouding's view of its own

10   technology.  And,

11                    I will point out, just to rebut Oracle's

12   argument, two of the patents in suit, the '481 patent and

13   the '621 patent, are both titled Technique For Enabling

14   Remote Data Access and Manipulation From a Pervasive Device.

15   So to describe Clouding's patented technology as dealing

16   with remote data access is entirely consistent with the

17   patents-in-suit.

18                    THE COURT:  It deals with remote data access,

19   but you are not contending that you have the patent on

20   everything to do with remote data access; correct?

21                    MR. BRAUERMAN:  No, correct.  We're not

22   contending that.  Nor does Rule 18 require us to allege

23   that.  The point is simply that the allegations in the

24   complaint are sufficient to meet Form 18 -- excuse me, I

25   think I said Rule 18 -- Form 18 requirements.  And that

1   is precisely the argument here on direct infringement.

2            I was surprised to hear Mr. Gross concede that

3   Form 18 is valid on the law because from reading their

4   papers, we certainly didn't have that understanding.  It

5   seemed that they were arguing for a much higher standard.

6   That *Twombly* and *Iqbal* require more than Form 18 requires.

7   And that position is inconsistent both with the Federal

8   Circuit law.  It's a pretty important law.  *Twombly* --

9   *Iqbal* and *Twombly* did not amend and/or are not inconsistent

10  with the requirements of Form 18.  And, indeed, the Federal

11  Circuit has held that.

12           Form 18 requires five allegations:

13           An allegation of jurisdiction.  That is not

14  challenged here.

15           A statement that the plaintiff owns the patent,

16  which Oracle concedes is made.

17           A statement that the defendant has been

18  infringing by making, using, selling, or selling a device

19  embodying the patent, which is I believe the issue here.

20           A statement about notice of infringement.  And,

21           A demand for relief, neither of which I believe

22  are challenged.

23           Clouding's identification of the accused

24  products complies with Form 18.  Form 18 only requires a

25  category of products, and that is what Oracle conceded is

1    required as well.

2            Oracle is asking for a greater level of

3    specificity than Form 18 requires and, quite frankly, the

4    specificity Oracle will receive in two weeks when Clouding

5    provides paragraph 4(a) disclosures which identify

6    preliminarily with specificity the products accused of

7    infringement.

8            So Oracle's concerns about the burden, the

9    scope, an overwhelming amount of discovery are already dealt

10   for under the Court's existing policies and procedures which

11   further demonstrate that the pleading stage is not the

12   appropriate opportunity to address this.

13           That the category of products, and to be clear,

14   in the complaint, the accused products in counts 1 and 2 are

15   product references as including Oracle 2g Release 2 as a

16   category of products.  Oracle hasn't said it can't identify

17   them.  Oracle simply complained that that may include a lot

18   of products.

19           That does not mean -- even if Oracle's complaint

20   is correct that Oracle's 2g Release 2 includes a lot of

21   products, that does not mean that the pleading is insufficient.

22   That doesn't contradict in any way that Clouding met the

23   requirement, Form 18 requirement to provide a category of

24   products.

25           THE COURT:  Whether it's sufficient or not,

1    let's put aside just for half a moment.  Are you

2    representing that in 2(e), consistent with your obligations

3    under probably the default standards, you are going to

4    disclose something more precise in the way of what is

5    accused with respect to count 1 and count 2?

6         MR. BRAUERMAN:  Yes, I believe that.  And, Your

7    Honor, I'm not prepared on those and I have not reviewed

8    them.  But it's my understanding that Clouding will be

9    providing more specific identification of accused products

10   consistent with its obligations under the default standards.

11        THE COURT:  Is it your understanding that that

12   was something your client was not in a position to be able

13   to do at the time it filed the amended complaint?

14        MR. BRAUERMAN:  I'm not sure I can ask answer

15   that question, Your Honor.  It may have been possible, but

16   it was not required.  And the reason we know it wasn't

17   required is because it's a separate requirement later in

18   the process.  At the pleading stage, that level of

19   specificity isn't required.  That is why the Court has added

20   an additional requirement through the default standards.

21        So I can't represent either way whether we were

22   or weren't unable to provide that earlier in the complaint,

23   but we don't think that is the question.  There wasn't an

24   obligation to do so.  All we had to do at the pleading stage

25   was identify a category of accused products or systems, and

1    we did that.

2            We now, through the Court's procedures, need

3    to provide additional specificity and we will do that.  And

4    these will further be narrowed through the course of

5    discovery and the ordinary course of the case.

6            None of that bears on whether Clouding met

7    the pleadings standards which all requires a category of

8    documents or, excuse me, category of accused products or

9    systems which is what we provided.  It's not as clean in

10   the software space as electric motors, but the fact that you

11   use different nomenclature to identify software systems or

12   products does not mean that you didn't identify a category

13   of accused products required by Form 18, and decisions of

14   this Court have so held.

15           THE COURT:  Address, there is an example in the

16   briefing about the space shuttle.  Basically, I think it

17   was if you have a patent on an electric motor or something

18   similar to that and then you allege the defendant makes an

19   entire space shuttle, that that would not be adequate to

20   identify the accused component, for lack of a better word.

21           Are they right that at least in that example,

22   that would not be adequate even at the pleadings stage?

23           MR. BRAUERMAN:  I believe the Court -- I think

24   they took that example from a case.  I believe the Court

25   held that they were correct there, that that was not

1   sufficient.  But that is not what we have here.  We have

2   identified a specific category of products and systems that

3   include a specific feature or were part of a release that

4   contained specific features:  the Oracle 2g Release 2.

5           That's not the same thing as saying all spaceships

6   have electric motors and because you make space ships we're

7   accusing your product.  In that example, that is a far

8   broader; and although I think under some of the case law, that

9   allegation probably would have been sufficient, this Court has

10  held that a general allegation against handset telephones,

11  mobile telephones was sufficient, a sufficient identifier.

12          It would depend on the facts of the spaceship

13  case, which I apologize, Your Honor, I don't have it at my

14  fingertips.  But I don't think that is what we have here.

15  So even if they are correct and that is insufficient, what

16  we have done here is far different and entirely consistent

17  with the requirements of Form 18.

18          THE COURT:  Well, you say it's entirely

19  different.  I imagine the defendant will, given the

20  opportunity, say it is not entirely different.

21          As I sit here, I don't know what Oracle's -- I

22  don't even know if it's 2g or 11g release, and I certainly

23  don't know what it is.  So how, at this stage of the

24  proceedings, do I decide if it's like a space shuttle or if

25  it's something narrower than a space shuttle.

1           MR. BRAUERMAN:  Well, I think, without even

2    knowing, and I confess, Your Honor, I don't know what the

3    Oracle 2g Release 2 is, but there are members of Clouding's

4    team that do and certainly members of Oracle's team that

5    knows what that means and conceded that it provided enough

6    specificity for them to identify a broad range of products

7    that include that, which should really be dispositive of the

8    issue.

9           They haven't come here and said we have no idea

10   what they're accusing because Oracle Release 2g Release 2

11   has no meaning.  That is not what they said, and I think

12   that is the analog of the spaceship argument.  Saying we

13   make spaceships and you have a patent on electric motors

14   doesn't really give us any indication of infringement.

15   That is not what happened here, and that is not what the

16   allegations are here.  And,

17          The very simple answer to Your Honor's question

18   as to how Your Honor determines that is that is the burden.

19   There is a very high burden on a motion to dismiss.  Motions

20   to dismiss are disfavored and all reasonable inferences are

21   to be made in the plaintiff's favor.

22          Given the record and the information here,

23   the Court should reasonably infer that the specific

24   identifications in the counts of categories of accused

25   products and systems are sufficient to meet Rule 11.  So on

1    on a pleading standard alone, they have not carried their

2    burden on the motion to dismiss, and the Court should deny

3    it.

4              THE COURT:  What about what the defendants refer

5    to as your repeated use of this hedging-type language in the

6    complaint?  For instance, products and/or services, by way

7    of example, that type of language?

8              MR. BRAUERMAN:  Well, I don't think there is

9    anything improper with using products and or services.

10   Different people categorize different systems.  Different

11   companies categorize different systems.  There is nothing

12   conditional, to use their term "hedging," about that

13   descriptor.

14             Here, there are products.  The specific language

15   of the complaint is "products and/or services that are

16   configureable through another product called the Oracle VN

17   Manager."  That gives you a very specific recitation of the

18   category of accused products that use the Oracle VN Manager.

19             I don't see the concern there about hedging.  It

20   identifies with some degree of specificity the category of

21   products and services that are accused.  So I'm not sure if

22   I entirely understand their concern.

23             The complaints where those issues came up,

24   there was far more conditional language.  I don't think this

25   language is conditional.  It identifies.  And that is to be

1    expected because when Clouding was preparing its complaint,

2    Clouding was relying only on publicly available information.

3    When Clouding obtains Oracle's core technical documents that

4    it needs to prepare its infringement, its preliminary

5    infringement contentions, there will be a far greater

6    degree of specificity.  But at this stage of the pleadings,

7    Clouding isn't required to do that.  Clouding has to meet

8    Form 18 and it has done so here.

9         It is worth noting that Oracle is the only one of

10   the defendants who moved to dismiss the direct infringement

11   claims.  Some of the other defendants against whom these

12   patents have been asserted in the complaints that are

13   consolidated for scheduling purposes, none of those defendants

14   moved to dismiss the direct infringement claims.  They did

15   move to dismiss the willfulness and inducement claims and I'm

16   happy to turn to that when we're done discussing this.

17        But it appears that Oracle came here to argue,

18   although they seem to have abandoned it, for a much higher

19   pleading standard than is actually the law.  And once you

20   accept, having waived that or having backed away from that

21   position, Oracle doesn't really argue, although they I

22   guess attempt to, that Clouding didn't meet Form 18.

23        But consistent with the case law in this District,

24   I think Clouding's identification of the products or the

25   categories of products that it accuses of infringement do meet

1    Form 18, and the Court should deny the motion to dismiss.

2            To address Your Honor's question, if Your Honor

3    is inclined to agree with them, we think it would be without

4    prejudice we believe to amend, but we don't think the Court

5    should dismiss at all.  I just wanted to make Clouding's

6    position clear for the record.

7            THE COURT:  That would be your position with

8    direct and indirect infringement as well?

9            MR. BRAUERMAN:  That's correct, Your Honor.  It

10   would.

11           THE COURT:  Why don't you turn to one of those

12   now.

13           MR. BRAUERMAN:  Thank you, Your Honor.  I'll

14   start with indirect infringement.  Again, there is no

15   dispute that -- well, first, let me state clearly to the

16   extent there is any confusion, Oracle is only alleging

17   inducement or willfulness for postlitigation conduct.

18           THE COURT:  You mean Clouding.

19           MR. BRAUERMAN:  I'm sorry, yes.  Clouding is

20   only alleging inducement and willfulness for post-infringement.

21           THE COURT:  Don't I have to do something, grant

22   some sort of relief to the defendant in order to make that

23   absolutely clear?

24           MR. BRAUERMAN:  We don't think so because we

25   think the allegations in the complaint in the tense it has

1    today plus as in the past tense compared to when the

2    complaint was alleged, we think it's clear.  We think we

3    made it clear here.  I don't think Clouding would oppose a

4    ministerial order I guess stating that we're only seeking

5    postlitigation -- we're only seeking damages for inducement

6    and willfulness for postlitigation conduct.  We made that

7    clear in the record.  We made that clear in the papers.

8              I don't think it's necessary for the Court to

9    enter an order.  Certainly, if we discover prelitigation

10   conduct during the course of discovery, we would have the

11   right to move for leave to amend; but where we are today, I

12   think that we have made that abundantly clear.  I don't,

13   quite frankly, see the risk to Oracle or the need to burden

14   the Court with an order to address that.  I think the

15   representations they have today, plus those made in our

16   papers are sufficient to protect them should that issue

17   arise in the future.

18             With respect to, and I'll deal with sort of

19   indirect infringement and willfulness together.  There is

20   no dispute that Oracle had knowledge of the patent, at least

21   of the nine patents as to which these counts are asserted,

22   at least as of the date of the filing of the original

23   complaint or more fairly the date of service of the original

24   complaint, which is a ministerial difference not necessary

25   for our purposes here.

1          So the issue is whether, with that knowledge,

2    Clouding has adequately pled the intent elements necessary

3    to survive a motion to dismiss on those claims.  And in that

4    regard, it is worth noting that the *MONEC* case that Oracle

5    referenced dealt with knowledge.  In that case, the Court

6    said that the plaintiff did not adequately allege post-suit

7    or -- I think that was a pre-suit case -- pre-suit knowledge

8    of the patents-in-suit and simply marketing or operating in

9    the environment wasn't enough for knowledge.

10          That is not what we have here.  There is no

11   dispute at least as of the date of the complaint, Oracle

12   had knowledge of the patents in suit.  And what the

13   decisions of this Court have held, in *MONEC* in particular,

14   which is why we relied upon it, it said:  A claim of induced

15   infringement can be based on nothing more than the fact that

16   the defendant received a letter accusing its products of

17   infringement and continued to sell products containing the

18   allegedly infringing component.

19          That is what Clouding has alleged.  That is all

20   Clouding needed to allege to survive a motion to dismiss.

21   And their attempt to distinguish *MONEC* fails because that

22   was a knowledge issue.  Here, there is no dispute about

23   knowledge.  It's intent.  And knowingly selling a product

24   that infringes or is alleged to have infringed or continuing

25   to knowingly sell that product is sufficient to state a

1    claim for inducement.  That is what Clouding has done here.

2              So the Court should deny their motion to

3    dismiss.

4              THE COURT:  But there is no letter here; right?

5              MR. BRAUERMAN:  That's correct.  But if you

6    substitute, the original complaint has the same impact as

7    the letter.  There is no either policy, substantive or

8    logical basis to treat a complaint which arguably provides

9    more information and more detail than a demand letter might

10   provide from treating a complaint differently than a demand

11   letter when it's alleged in the amended complaint.

12             THE COURT:  Are there any allegations of

13   specific facts to show that Oracle possessed the specific

14   intent to induce or encourage customers to infringe the

15   patents-in-suit?

16             MR. BRAUERMAN:  Specific facts, probably not.

17   Because as Your Honor is aware, pleading intent is -- well,

18   proving intent is a very difficult standard that is often

19   factual dependent based on facts that are exclusively in

20   Oracle's possession, which is why the pleading standard

21   doesn't require Clouding to allege those specific facts at

22   this time.  All we need to do is to allege facts from which

23   the Court could reasonably infer -- and we believe we have

24   done that -- that Oracle intended to induce infringement.

25             As this Court has held, all that is required to

1    do that is that they continue to sell the accused products

2    with knowledge of the patents.  And here, we have more than

3    just knowledge, although we learned it after the complaint,

4    but they conducted a significant analysis by their own

5    statement in the context of the motion to stay.  So that I

6    think colors the statement.

7              They're certainly well aware of patents.  They're

8    well aware of the allegations against their products, and

9    they're continuing to encourage their customers to purchase

10   and use their products.  And that is what we have alleged and

11   that we believe is sufficient to survive a motion to dismiss

12   under the precedent in this court and in others.

13             THE COURT:  Do you allege anything in the

14   operative complaint now, the amended complaint before us now

15   about the nature of the relationship between Oracle and its

16   customers?

17             MR. BRAUERMAN:  I'm not sure that we do,

18   necessarily with that level of specificity.  Certainly, you

19   know, we allege that Oracle encourages its customers to

20   continue to sell the products.  But, again, I don't think

21   that is an allegation that is necessary for Clouding to

22   bring in order to maintain a claim for inducement.  And,

23             Again, if the Court disagrees, we respectfully

24   ask that the motion be granted without prejudice so that we

25   may add those allegations.

1          THE COURT:  I think you will give me the same

2    answer, but one more question here.  Do you allege anything

3    in the amended complaint about how the use of Oracle's

4    products relates to the patents-in-suit?

5          MR. BRAUERMAN:  Probably not with the

6    specificity that I understand Your Honor to be asking

7    whether we've included.

8          I think we do provide an overview as we

9    understand it today of how Oracle's products work and the

10   bases for infringement, but that is an overview.  I don't

11   think it contains specific facts, to the extent I understand

12   Your Honor to be asking, although again, with my same

13   answer, we don't believe that is required, but if the Court

14   disagrees, we would ask the Court to grant the motion

15   without prejudice.

16         I will point Your Honor to the *MONEC* case which

17   I believe supports our position as well as the *Netgear v*

18   *Ruckus Wireless* case that Judge Robinson decided in March of

19   last year in which she held plaintiff's allegations that the

20   defendant is involved in the marketing and distribution of

21   its products are sufficient to claim induced infringement.

22         So Clouding doesn't believe the specific

23   allegations that Your Honor is asking about are necessary

24   or required.  That is consistent with Rule 9 which states

25   that intent and knowledge do not need to be pled with

1    specificity.  And we believe that Clouding's pleadings

2    standards have met that for induced infringement.

3              Does Your Honor have anymore questions on

4    inducement before I move to willfulness?

5              THE COURT:  No, thank you.

6              MR. BRAUERMAN:  So addressing willfulness.  Your

7    Honor, in speaking with Mr. Gross, correctly identified the

8    problem that non-practicing entities have.  *Seagate* did not

9    intend and should not be read to prohibit non-practicing

10   entities who, as a practical matter after *eBay,* are not

11   entitled and would not be reasonable to seek injunctive

12   relief.  It would be burdensome to the Court.  It would be

13   burdensome to the parties to make that a prerequisite.

14   There is no reason to do that and that is not required.

15             What *Seagate* did say is whether a willfulness

16   claim based on conduct occurring solely after litigation

17   began for postlitigation conduct is sustainable depends on

18   the facts of each case.  That is what *Seagate* held.  It

19   suggested that in most cases, and that is because it was

20   in a pre-*eBay* world, where injunctive relief was available.

21   But here, if the Court were to deny the motion, Clouding has

22   no remedy for defendant's willful infringement.  Even if

23   Clouding recovers monetary damages, it doesn't get the

24   enhanced damages that it might otherwise be awarded if it

25   succeeds on its willfulness claims.

1          There are courts, including this one, that

2     have -- in *St. Clair v Palm*, in 2009, Your Honor rejected

3     precisely this argument and permitted -- it was in a

4     slightly different context but permitted an amended

5     complaint that added willfulness based on postfiling

6     knowledge and conduct because the Court wrote:  There is no

7     per se requirement for a plaintiff to file for preliminary

8     injunctive relief before raising a willfulness claim.

9          THE COURT:  What about *SoftView*?

10         MR. BRAUERMAN:  In *SoftView*, Your Honor decided

11    the other way; and there is conflicting precedent in this

12    jurisdiction.  We will note that in *SoftView*, the Court

13    did grant that dismissal without prejudice.  But we think,

14    respectfully, that this case is slightly different than

15    *SoftView.*

16         That, in all candor, Your Honor, is a difficult

17    case for us.  *SoftView* and *St. Clair* are inconsistent.  We

18    think the Court's decision in *St. Clair* was the appropriate

19    one.  We think the Court's decision in *SoftView* was not.  We

20    think that the Court was relying on provisions of *Seagate* in

21    *SoftView* that -- relying more heavily on parts of *Seagate* in

22    *SoftView* and less heavily on the sections of *Seagate* we

23    believe the Court should be relying on here in granting

24    that.  But certainly there is a tension in the case law

25    there.  We believe that the Court properly decided it in

1    *Palm.*

2              THE COURT:  How about *Aeritas*?  Is the same

3    argument?

4              MR. BRAUERMAN:  It is largely the same argument,

5    but *Aeritas* is different.  Again, I think that was -- and

6    I'm trying to remember because I'm involved in that case.

7    We do think it is different.  We know the Court granted that

8    dismissal without prejudice.  And, again, we think the Court

9    was focusing on some sections of *Seagate* in view of others,

10   and we think the policy issues with leaving a non-practicing

11   entity without a remedy to address willful infringement is

12   problematic, and that line and those two cases just went the

13   wrong way.  That's our view.

14             THE COURT:  On the other hand, though, isn't it

15   problematic if the Court establishes a rule that makes it

16   easier for non-practicing entities to pursue willful

17   infringement enhanced damages when the knowledge and the

18   intent solely arise from the filing of the complaint?  Why

19   should we make it easier for a non-practicing entity to get

20   there than a practicing entity?

21             MR. BRAUERMAN:  Well, I'm not certain that

22   the Court makes it easier.  If the Court were to deny

23   the motion, I don't think that makes it easier for a

24   non-practicing entity.

25             THE COURT:  Well, to the extent the ruling is

1    based on a view of *Seagate* saying that at least for a

2    non-practicing entity, you are generally not required to

3    pursue non-injunctive relief.  If we were to say that,

4    wouldn't that be making the world better for NPEs than for

5    PEs?

6              MR. BRAUERMAN:  Not necessarily because PEs have

7    a remedy that I'm sure NPEs would love to have.  If NPEs

8    were able to obtain injunctive relief to remedy willful

9    infringement of their patent, I'm sure NPEs would be

10   ecstatic with that.

11             The fact of the matter that the NPEs, as a result

12   of *eBay*, unless they're a research institution, and even then

13   in only rare circumstances, have been deprived of a remedy

14   that they may in many cases prefer because it would make it

15   easier for them to license.  We'll talk about the prejudice

16   more in the motion to stay, but, you know, that would make it

17   easier.  I think having access to injunctive relief would make

18   it far earlier for NPEs to conduct their licensing business

19   because they would have a better ability to exclude others

20   from the marketplace which would, by definition, make the

21   value of their licenses increase.

22             So I don't think we're making it easier for

23   NPEs to plead willfulness than PEs where there is just a

24   practical reality that because NPEs are limited in the

25   remedy that they're able to seek from willful infringement

1    of their patents, that that may be an unintended

2    consequence.  But I think it must be viewed in the context

3    of the fact that the NPE is already being limited in the

4    remedies it can seek.

5             For that reason, and the others in our papers,

6    unless Your Honor has any questions, we respectfully request

7    the Court deny the motions.  And if the Court is inclined to

8    grant the motion, that it be without prejudice.

9             THE COURT:  Okay.  Thank you very much.

10            MR. BRAUERMAN:  Thank you, Your Honor.

11            THE COURT:  Any rebuttal?

12            MR. GROSS:  Thank you, Your Honor.  I'll keep

13   this very brief.  I have three points for each of the

14   categories of claims here.

15            On willfulness, I absolutely agree with what Mr.

16   Brauerman said about *Seagate* when he told the Court that

17   willfulness under *Seagate* depends on the facts of each case.

18   But Clouding has pleaded no facts about objective

19   recklessness in its complaint, and that is the undisputed

20   standard.

21            On inducement, Clouding spent a significant

22   amount of time talking about the knowledge of the patent

23   that is required and addressed in *MONEC* but very little time

24   talking about the specific intent to induce infringement

25   that is required.

1          It has to be plausibly shown in order to state a

2     valid claim, and there is no facts in the amended complaint

3     to show Oracle had the specific intent to encourage others

4     to infringe its patents.  No allegations that it was

5     holding seminars to show how to infringe or sales tactics to

6     encourage others to infringe.  It simply doesn't exist in

7     the complaint.  And,

8          Then moving back to the direct infringement

9     claims.  Clouding has suggested that it's clarified through

10    its briefing on this motion that Oracle brought what it

11    really meant about some of its allegations.  Let me correct

12    my statement.  This isn't just about the direct claims.  On

13    the inducement claim, Clouding has suggested that now it's

14    clear after briefing that it really only is pleading

15    post-suit inducement.

16          It's also suggested with respect to the direct

17    infringement claim that in a couple of weeks, when Clouding

18    complies with this Court's local rule disclosures, its

19    paragraph IV disclosures, then Oracle will know more about

20    what it is actually accusing of infringement.

21          That is just not enough under *Iqbal*, under

22    *Twombly*, under Form 18.  It's a plaintiff's obligation

23    before it comes to this Court to provide a defendant with

24    adequate notice of its claim and the grounds for it.  So

25    that several months into this case, Oracle is finally giving

1    that adequate notice when the discovery process is underway.

2            By coming to court with a deficient complaint

3    like this, that doesn't have sufficient facts pled, Clouding

4    is trying to force a disproportionate burden on Oracle and

5    other defendants that is simply unfair and requires them to

6    do far more than should be necessary to adequately prepare

7    to defend and provide discovery and manage this sort of

8    case.  Thank you.

9            THE COURT:  Thank you.  Let's move on to the

10   motion to stay.  We'll hear from the defendant first.

11           MR. LUMISH:  Thank you, Your Honor.  Doug

12   Lumish, Kasowitz Benson for Oracle.

13           Your Honor, I think the stay motion raises a

14   question of first impression for the Court.  I don't

15   believe the Court has yet ruled upon how to deal with a stay

16   in the context of the inter partes review post-AIA.  So you

17   will see in the papers that both parties are citing to

18   reexamination cases as analogous.  And, of course, as you

19   know, those cases go in both directions, including cases

20   from Your Honor and from most of the Judges in the District.

21   And that is because they're very factually specific.

22           THE COURT:  The Court has a lot of discretion;

23   correct?

24           MR. LUMISH:  It's a discretionary question, Your

25   Honor.  The reexamination cases give, though, I think three

```
 1    pivotal issues that seem to guide the Court toward granting

 2    or denying a stay.

 3              The first pivotal issue is the timing of the

 4    reexamination and the life-span of it, I mean.  So when

 5    there is a reexamination that looks like it's going to take

 6    three years, six years, eight years, the Court seems more

 7    inclined to deny the stay.  That is more prejudicial to the

 8    patent holder.  That is simply not the case here; and, in

 9    fact, because it's an inter partes review, it will never be

10    the case here.

11              The very purpose the America Invents Act sought

12    to accomplish with the inter partes review process was to

13    take out the long delays that attended reexaminations.

14    There is a 12 month statutory period from the initiation to

15    review by which the Patent Office has to achieve its goal,

16    unless it gives itself one and only one six month extension.

17    And it's supposed to do that only rarely, according to the

18    legislative history.

19              THE COURT:  Of course, it's not just first

20    impression for me.  This is all new, so we don't know how

21    rare rare will be; correct?

22              MR. LUMISH:  We don't, Your Honor.  We don't

23    know but we can only have the legislative history to say it

24    should be done rarely.  Time will tell.

25              The parties can settle the inter partes review,
```

1    which is something that couldn't happen before.  So the

2    demotivating concerns that some saw with the long delay and

3    how that would impact the settlement are erased because if

4    the inter partes review is going well for Oracle, the

5    parties can settle out the IPR.

6              Clouding can do things to speed it up that we

7    reference in our paper.  They can waive the initial

8    statement.  They can speed up the initial statement.  They

9    can make their amendments earlier in the process.  There is

10   discovery involved that will help make it a more fulsome

11   process but also can be used to do things earlier.  And

12   the higher threshold of the inter partes review means we're

13   going to get through, which would mean less of a glut and

14   more of an efficient process.  Less claims, fewer, fewer

15   litigants that will actually achieve the initiation of the

16   review in the first place.

17             THE COURT:  Now, your request for inter partes

18   review is at this point just a request.  That the PTO hasn't

19   even initiated that 12 month time period yet; correct?

20             MR. LUMISH:  That is exactly right, Your Honor.

21             THE COURT:  And they have to make some decision

22   in order for that to happen.  So I suppose as I sit here

23   now, it's possible that they won't ever even start the inter

24   partes review that you are requesting; correct?

25             MR. LUMISH:  It's possible, Your Honor.  There

1   are 11 patents.  I think that is statistically very unlikely

2   but it is possible.  In that case, though, I submit it would

3   just be a very short stay because we're going to know that

4   at the most three months from now.  So that stay would be

5   one that has very little impact on anything for either side.

6        THE COURT:  Now, on the other hand, at least in

7   your reply brief, you make an argument that suggests you all

8   might file additional requests for inter partes review.  Is

9   there no time limit on when you can do that?

10       MR. LUMISH:  There is no time limit on when we

11   can do that.

12       That's wrong, Your Honor.  I believe there is a

13   12 month time limit from the first filing in which we can

14   seek additional inter partes reviews of the same patents.  I

15   think it's 12 months.

16       THE COURT:  12 months from this past December

17   when you first filed the request for inter parties review.

18       MR. LUMISH:  I believe that is right, Your

19   Honor.  I'm not 100 percent certain.

20       THE COURT:  And so it seemed to me, I didn't do

21   the actual math, but you have sought inter partes review on

22   all 11 patents but only for approximately a third of the

23   claims of all those patents if you add them up together.

24   Does that sound about right?  I think that is about right.

25   It's about 99 out of something over 288.

```
1              THE COURT:  And so you're saying you have the

2    right under the statute any time up until let's say December

3    of this year to file additional requests for inter partes

4    review for the remainder or any subset of the remainder of

5    the claims of the 11 patents in suit.

6              MR. LUMISH:  I believe that is right, Your

7    Honor.  The reason that came up wasn't really related to the

8    length of the stay but to the concern that Clouding raised

9    that we didn't do all of the claims.  That we didn't submit

10   all of the claims into the IPR.  Almost 100 claims are

11   submitted.  Only 20 will go to trial.  So we've actually

12   submitted to the Patent Office more than five times the

13   number that is going to go to trial in this case based on

14   Your Honor's scheduling order.

15             And so -- I'm sorry.  My colleague corrects me.

16   I made a mistake.  The petitions have to be filed within a

17   year of the complaint.

18             THE COURT:  Oh, I see.

19             MR. LUMISH:  Not in the initial inter partes

20   review.

21             THE COURT:  So some time this Spring, I imagine.

22             MR. GROSS:  May 22nd, Your Honor.

23             THE COURT:  Thank you.  Thank you very much.

24             So my question, though, is I understand the

25   scenario where the stay could be very short.  June or so,
```

1    the PTO says we're not looking at any of these.  But, on the

2    other hand, it's possible, it seems to me, you expressly

3    reserved the right to, by some time before May 22nd, I think

4    it was, file a whole slew of additional requests for inter

5    partes review which would trigger an approximately six month

6    time frame for the plaintiff to answer and for the PTO to

7    decide whether to start the 12 to 18 month clock.  So I'm

8    concerned if I grant the stay you are asking for it may be

9    quite a long stay.

10              MR. LUMISH:  So, first of all, that is not

11   necessarily true on the timeline, Your Honor.  The Patent

12   Office, as I understand it from our prosecution counsel, can

13   and I think will seek to consolidate and has the discretion

14   to put the new petitions into the old timeline.  So it would

15   be very difficult for Oracle, but it can put the 12 month

16   and the extension periods that are currently in place as

17   governing on the new petitions.  Whether we'll do that or

18   not, I can't guarantee, Your Honor.  So I think we would

19   look to do that.  I think it's going to want to keep things

20   on the same track, especially given the entire purpose of

21   the process being to expedite these proceedings.

22              Your Honor also doesn't have to make a stay the

23   court stay one that would automatically accept that; right?

24   Your Honor could -- and I have seen or courts do this --

25   have a stay that requires us to report to Your Honor in

1     six month increments or along those lines.  And if the Court

2     believes the stay is taking too long, you can lift it.  It's

3     completely in your discretion.

4          THE COURT:  Sure, but that is not what you are

5     asking me to do.  Your preference, and what you are here

6     today to argue for is a stay that will last until the last

7     of the inter partes review.

8          MR. LUMISH:  We are, Your Honor.  And the reason

9     being all the obvious reasons that you know from the case

10    law, that there is overlapping invalidity issues here.  The

11    inter partes review is now done by a three person panel.

12    There is discovery.  It's more of a complete process than

13    the old one was.  And we think that the efficiencies the

14    Court would gain and the lack of potentially inconsistent

15    results is an important thing to take into account.  The

16    estoppel effect that would be placed on Oracle I think

17    resolves a lot of the other concerns we have heard about

18    as well.

19         So, yes, we would prefer, and we think it's more

20    appropriate to issue the stay to cover the lifecycle of the

21    inter partes review petitions for any claims that are

22    asserted in this case.

23         THE COURT:  And you mention estoppel.  Let's

24    talk about that.  You are only here for Oracle.  I'll note

25    for the record there are some friends of yours in the room

1    that may be watching us for others but they're not speaking

2    at the moment.  Are you able to represent anything as to

3    whether anybody else is agreeing to be estopped by the

4    positions you are taking in the inter partes review?

5            MR. LUMISH:  Your Honor, I only note what is

6    submitted in the papers, which is that Rockspace has filed

7    its own motion for stay and Amazon -- pardon me, I was

8    trying to place them in the defendant group -- has also

9    either filed a motion or I know is intending to file a

10   motion.

11           So my understanding is they have agreed to

12   estoppels on the art that was submitted by Oracle.  Oracle's

13   estoppel goes deeper under the statute.  It would cover

14   anything submitted or that could have been submitted.  That

15   is going to be a litigated question I think as well, Your

16   Honor, fairly, but that is what the statute says.

17           I think the other defendants have agreed or would

18   be, either by their own motions or otherwise, estopped for the

19   art that is submitted but not necessarily that Oracle could

20   have submitted because they don't even know what that is.

21           THE COURT:  So that is relevant when I consider

22   the likelihood of simplification factor.

23           MR. LUMISH:  It is definitely relevant, Your

24   Honor factor.  And I think it weighs against Oracle at some

25   level, but when you look at the Clouding litigation in a

1   broader perspective, I don't think it makes that big a

2   difference.

3            They also sued a large number of defendants in

4   other cases.  They're not consolidated with this one.  There

5   is going to be multiple proceedings on these patents anyway.

6   Your Honor is not in a position I don't think to consolidate

7   all of them or the Court hasn't been asked to, anyway, put

8   all these together.

9            So the concern of piecemeal litigation is

10  already out there.  And it's just, we're talking about

11  Oracle alone here in a much larger sphere of litigation.

12  So, yes, while it's a factor and you should consider it and

13  it weighs against Oracle, I think it only weighs slightly

14  against Oracle.

15           Going back to the cases, if I might, Your Honor.

16  The second thing that is heavily looked upon by the Court in

17  the reexaminations cases for determining whether to grant a

18  stay or not is the timing of when the reexamination was

19  brought and when the stay motion was brought.  And when

20  they're brought on the eve of trial, when they're brought

21  after Markman, the Court tends to deny the motions for stay.

22  When they're brought early in the case, the Court more often

23  than not tends to grant the motion to stay.

24           Here, it's very early in the case despite the

25  complaint date.  Four months after the amended complaint was

1    filed -- the reexaminations, pardon me, the inter partes

2    reviews were filed.  There is no trial date set.  There has

3    been no Markman hearing.  Discovery has only just begun.

4    And we're still resolving the pleadings, as Your Honor knows.

5    So while it's not, in and of itself, dispositive, the fact

6    this is very early on in the case and the reexaminations

7    were filed quickly and the motion was brought immediately

8    should weigh in Oracle's favor.

9              Then the third thing I note and the case law

10   that I think tends to push towards stay or looks whether

11   stay should be granted by a court is the relationship of the

12   parties.

13             Here, there is no question we are not direct

14   competitors.  In the last motion, Your Honor talked about

15   the NPE status of Clouding.  That is not in dispute.  So the

16   prejudice that comes to a party from a stay when there are

17   competitors out there competing with them in the marketplace

18   for the same customers with an allegedly infringing product

19   doesn't exist here.  They want money.  They don't plead in

20   their complaint a prayer for relief for an injunction.  They

21   don't ask for one.  So this case is only about money, it's

22   compensable in dollars, and you can assess interest for any

23   additional harm that they can claim was levied upon them by

24   the delay.  So that relationship is very important one.

25             All three of those pivotal factors, as I think

1    of them, weighs towards a stay for Oracle.  Two cases were

2    cited to Your Honor on inter partes review stay motions.

3    Neither is from this court.  Neither is going to govern your

4    decision.  One from New York and one from California.  And

5    they go in opposite directions but they actually echo some

6    of these same principles.

7            The *SEL* case that Oracle cites has similar

8    timing.  There wasn't a Markman hearing yet.  There wasn't a

9    trial date set, or the trial date was set but it was

10   17 months after the motion was decided.  The parties were

11   not direct competitors.

12           Then the *BOS* case, we don't know too much.

13   There is an order that says "see transcript" and we don't

14   have the transcript but we do know there was a prior

15   reexamination of the same patent that had already occurred

16   and that had confirmed all the claims so the Court had seen

17   this as something of a delay, the repeated process.  And the

18   parties in that case were direct competitors, with a long

19   history of litigation.  So the facts are different from the

20   ones here in the *BOS* case and they echo again the same kind

21   of principles the Court has relied upon.

22           I'd like to jump if I may, Your Honor, to some

23   of the argument that I think counsel will get up and make

24   and that we saw in the papers.  One is that there is four

25   years plus of delay, and we talked about that some.  That is

1    not the way the statute is supposed to work.  I don't think

2    there is any reason to assume this is going to be a four

3    year delay as opposed to what should be a one year process

4    from initiation which could start very soon.  The notion

5    sort of confuses in some way the reexamination problem where

6    there could be six years or eight years before the appeals

7    are remedied.

8            We have not asked for a stay pending the appeal.

9    Again, Your Honor, would have discretion on how to handle

10   that when the time comes.  If all the claims are canceled

11   and there is going to be to be an appeal by Clouding, that

12   is one thing.  If all the claims are confirmed and there is

13   no amendments and there is going to be an appeal by Oracle,

14   that is another, and you can decide whether a stay would be

15   appropriate at that stage.

16           Given the timelines, this whole thing could be

17   done by March 2013.  I'm not saying it will be but it could

18   be.

19           THE COURT:  Two months from now.

20           MR. LUMISH:  2014.  I'm sorry.  Pardon me.

21           THE COURT:  Okay.

22           MR. LUMISH:  The next argument raised by

23   Clouding that is important is not all the claims are in the

24   IPR.  Again, there is almost 100, there are 99, which is

25   five times more than the 20 that we're going to see.  And

1    there is no dispute that the 99 cover the 20.  In other

2    words, that the 20 that they probably have already

3    identified as their best 20, they've never stood up to the

4    Court, in the papers yet and maybe they will do it five

5    minutes to undercut this, but they haven't yet said that is

6    not the right 20, that they're not included in the 99.  So

7    there is no basis for Your Honor to assume that, in fact,

8    there is going to be more IPRs, there are going to be other

9    claims that aren't covered.

10          Even if there were, though, the fact that

11   some of the claims that are likely to be at the trial or

12   ultimately at the end of this case are in the IPRs I think

13   would be very important because there is going to be

14   amendments statistically or cancellations statistically to

15   some of those claims, and there is significant prejudice to

16   Oracle to have to go to litigate over claims that are going

17   to change or they are going to disappear.  To put up

18   witnesses, to find discovery, to do any discovery process,

19   to have a noninfringement analysis that is a shifting sand

20   because the claim language changes, to argue Markman to Your

21   Honor on claims that may look very different months later.

22          The next issue I think that may come up is the

23   scheduling order somehow resolves.  And we heard some hints

24   of this in the motion to dismiss.

25          The scheduling order doesn't resolve this

1   question at all.  Yes, it's true Your Honor has a scheduling

2   order that we think is helpful to reduces the number of

3   claims in a progressive fashion but it's six months until

4   the asserted claims, as I read it -- let me withdraw.

5          My point is a little different which is it

6   doesn't make any difference.  There is going to be discovery

7   done even with the reduction of claims on claims that are

8   ultimately cancelled or claims that are ultimately amended

9   if you believe the statistics which are that, depending on

10  the cases you read, 75 percent or something on the order of

11  85 percent of claims in reexamination are changed in some

12  fashion or canceled.

13         So that they go down to 20 claims doesn't mean

14  we won't be litigating over claims that are ultimately

15  different from the ones that survive.  And that doesn't

16  make a lot of sense.  The scheduling order doesn't fix that

17  problem.

18         Lastly, Your Honor, I will address, or second to

19  last, the arguments on prejudice.

20         Other than the ones we've talked about already,

21  which I won't repeat, Clouding argues that there is somehow

22  a compulsory license provided.  That it gets a free pass to

23  go ahead and infringe during the period of the inter partes

24  reviews.

25         That's simply false.  There is nothing royalty

1    free about it.  If it's infringement of a valid patent as it

2    is found by the Court or by the jury, then there will be a

3    judgment in their favor for damages and there will be

4    interest assessed.  So that is not royalty free and it's not

5    a license.  It's an infringement that would ultimately be

6    recognized.  We don't think that's the way it will turn out,

7    but that's not a royalty-free license.

8              Clouding is being impaired in its ability to go

9    out to do its business to license its patents.

10             There is no evidence of that other than a

11   conclusion in a declaration.  And while we can't give you

12   all the details based on confidentiality, Your Honor, I

13   submit to the Court we have very good reason to believe

14   that, in fact, there are other people now.  They're

15   licensing other people as we speak.  In fact, I have clients

16   that are in discussion with them and there are other people

17   in the defense group that we think we will see settlements

18   from despite the fact that Oracle brought inter partes

19   reviews.

20             So while it may be harder to license a patent in

21   inter partes review, that water is already under the bridge.

22   I don't know if that is the right metaphor.  The inter

23   partes reviews are filed.  They're not going to go away.

24   Whether this case is stayed or not really doesn't impact

25   the -- the impact that the inter partes reviews may have on

1    their licensing program.

2             There is other things I think Your Honor will

3    see, but the last thing I would leave you with, unless you

4    have questions for me, there is an allegation in the

5    briefing that I want to address, which is that the motion to

6    dismiss that Mr. Gross argued before, some of the protective

7    order negotiations and things like that, were all done by

8    Oracle as a sham to try to delay this case so it can argue

9    to Your Honor that very little has happened and we should

10   stay it.

11            I just want to represent to you as an Officer of

12   the Court and as somebody who is involved in the decisions

13   for Oracle whether to bring the motion to stay and whether

14   to bring the motion to dismiss that the two had nothing to

15   do with each other.  There was no intent on Oracle's part

16   to bring a motion to dismiss purely as a tactic to help its

17   motion to stay.  In fact, from my understanding and my

18   involvement, there was no consideration of the motion to

19   dismiss as somehow being a tool to help the motion to stay.

20            THE COURT:  Going back to one point relating to

21   the potential for simplification.  The plaintiff is correct,

22   aren't they, that I am going to have litigation involving

23   Oracle no matter what the outcome is of the pending inter

24   partes review.

25            MR. LUMISH:  Because not all the claims are on

1    the inter partes review.

2              THE COURT:  That I think is the main reason that

3    they make that argument.

4              MR. LUMISH:  I don't that is right, Your Honor.

5    I don't think you can draw that conclusion.  What they

6    haven't told you is the 20 claims they really intend to

7    assert against Oracle are not presently being reviewed by

8    the Patent Office.

9              THE COURT:  But that would require me to

10   conclude, that they have a set in stone list of 20 and

11   that no matter what happens with the IPR, the inter partes

12   review, that those are the 20 and that is it.

13             MR. LUMISH:  I'm not saying you can draw the

14   other conclusion either.  I'm saying the conclusion that

15   there will necessarily be litigation against Oracle even if

16   it wins all its arguments in the IPR can't be drawn.  Nor

17   can you say that there necessarily won't be because there

18   are other claims that exist that aren't currently in the

19   inter partes review process.  That is a function of a 60

20   page limit that the Patent Office imposes upon the petitioner.

21             Again, it's something that could be addressed

22   with additional inter partes review petitions which, if not

23   consolidated, would extend the stay some but would still

24   provide the simplification and the conservation of resources

25   that the whole stay process is designed to affect.

1            THE COURT:  Okay.  Thank you.  We'll give you a

2     chance for rebuttal.

3            MR. LUMISH:  Thank you, Your Honor.

4            THE COURT:  We'll hear from the plaintiff.

5            MR. BRAUERMAN:  Thank you, Your Honor.  Steve

6     Brauerman again from Bayard on behalf of the plaintiff,

7     Clouding IP, LLC.

8            I wanted to start and we agree with Mr. Lumish

9     and Oracle that the standard by which the Court has judged

10    motions to stay pending inter partes reexamination apply

11    with or should apply with equal force to the new inter

12    partes review process.

13           Certainly, the Court has a fair amount of

14    discretion here, and we don't see much reason to apply a

15    different standard to these cases.  So assuming the Court

16    follows the same framework, I wanted to start, if I could,

17    with the prejudice prong because we believe that is

18    dispositive of the issue.

19           Truth be told, no party knows how long these are

20    going to last, and at this point it's really all speculation

21    from everybody.  It's entirely possible that everything is

22    going to go great for Oracle and we get this done in

23    March 2013.

24           THE COURT:  2014.

25           MR. BRAUERMAN:  I'm sorry.  Now I did it, too.

1    March 2014.

2              But we think, one, given the overwhelming volume

3    of material at the Patent Office and the time frames that

4    are set, that is just an unreasonable expectation.  And that

5    more likely, you are going to have a six month consideration

6    process.  You are going to then have 12 months from when the

7    IPR is accepted, if it's ever accepted, and then potentially

8    a six month period followed by two, three or potentially

9    four years of appeal.  We think two is a reasonable average.

10             We didn't understand Oracle to be asking for

11   review or a stay that would end before the appeal.  We

12   understood their motion to be seeking a stay during the

13   pendency of the inter partes review proceedings.  We

14   understood that to include an appeal.

15             To the extent they have narrowed that, we don't

16   think any stay is appropriate.  If the Court is inclined to

17   grant a stay at all, we respectfully request that that stay

18   end and not carry through the appeal, but we think that,

19   one, it's their burden here to prove that a stay is

20   appropriate.  So if you're balancing them, their speculation

21   that it's going to go quickly and I think Clouding's more

22   reasonable speculation that it's going to go slower, even if

23   those were equal, and we don't think they are, we think

24   Clouding has the better of those arguments.  That has to,

25   balancing the burden, favor against a stay.

1      This Court has denied stays in the past where

2   the prejudice would deny Clouding its chosen choice of

3   forum.  That is precisely what would happen here.  Clouding

4   filed this suit in this District on May 22nd of last year.

5   And if the validity claims were first litigated in the IPR

6   proceedings, Clouding would be denied its choice of venue.

7   That that is prejudice this Court has found to deny a stay.

8      In addition, a stay would result in the loss of

9   evidence.  And having not gotten to argue *SoftView* to Your

10  Honor before, I can now argue *SoftView* to Your Honor on

11  this point.  And in that case, Your Honor designed a stay

12  primarily based on the prejudice from the denial of the

13  chosen forum and the loss of evidence.

14     We think the four factors -- that consideration

15  of the timing of the reexamination and the timing of the

16  motion also factor.  We don't mean this pejoratively, but we

17  think this necessarily was strategic.  Most of the motions

18  filed in these cases, most of the actions taken are

19  strategic.  And we don't mean that pejoratively or suggest

20  that Oracle had done anything improper.  But in considering

21  whether Oracle should receive a stay as well, I think that

22  consideration does play in.  And,

23     In that regard, we'll turn to the simplification.

24  We think Oracle has not carried its burden to show there

25  will be any simplification by virtue of the inter partes

1     review procedure.  And here is why.

2          First, the scheduling order already had very

3     tight and precise limits.  On September 13th of this year,

4     Clouding will have to reduce to 40 asserted claims, and I

5     believe after or on or about the claim construction process,

6     we'll have to further reduce to 20 claims which can be

7     asserted at trial.

8          That means, I don't think it's disputed, that

9     Oracle has sought reexamination or, excuse me, inter partes

10    review of approximately 100 of 288 plus terms outstanding.

11    Because I'm not particularly good at math, I'm going to

12    round that to 300.  So there are 200 terms that are not

13    subject to inter partes review.  That is 10 times the number

14    of terms that Clouding can assert at trial.

15         So there is, if we're just going purely on

16    statistics, it is far more likely than not that Clouding

17    will assert different claims than those asserted in the

18    inter partes review procedure.  Clouding is still in the

19    process of determining which claims it will assert.  In

20    reviewing, it knows, it certainly has an idea.  But Clouding

21    believes it has a Rule 11 basis to assert infringement

22    claims based on a number of claims that are not subject to

23    inter partes review.

24         THE COURT:  It is true, though, that you have

25    not made the argument that roughly 100 that are in the inter

1    partes review right now encompass all or most of what you

2    currently consider to be your most likely 20 for trial.

3              MR. BRAUERMAN:  It's true that we made that

4    argument, but I'm not sure -- we did not make that argument

5    but I'm not sure I see the significance of it.  First, it's

6    asking us to prove a negative at a time when we haven't made

7    a final determination as to what claims Clouding might

8    assert.  It probably wouldn't -- and I'm speculating here

9    but I don't think it would surprise anyone in choosing which

10   20 or 40 claims to assert, Clouding might take into account

11   which claims are subject to inter partes review.

12             So there is still a broad array of claims that

13   Clouding could assert here that Clouding believes has a Rule

14   11 basis to assert infringement, and Clouding will reduce

15   those claims in the ordinary course and focus its view of

16   the claims it asserts once it receives discovery and, quite

17   frankly, defendant's invalidity contentions.

18             There is a reason that the Court narrowed the

19   claim terms when it did.  The first narrowing of the claim

20   terms occurs after the paragraph IV(d) invalidity charts are

21   exchanged.  So I think it's a little bit unfair to ask

22   Clouding to take a position at this stage about whether the

23   claims in inter partes review will or will not be likely to

24   be the ones that it asserts when it's lacking much of the

25   evidence it would use to make that determination and is not

1    in fact required under the scheduling order to make that

2    determination for another nine months.

3            So we think from that argument, though, it is

4    far more likely than not that the inter partes review is not

5    going to have any impact on simplifying the trial.  If

6    anything, it is going to increase the prosecution history

7    which will expand the burden.

8            The estoppel point is well raised.  Amazon has

9    filed their motion to stay pending reexam.  Amazon has agreed

10   to be bound by some but not all of the determinations.  It's

11   unclear whether, and to what extent, any of the other

12   defendants will agree to be bound by the findings of the PTO

13   and the appeals board, if the inter partes review is accepted,

14   and then once it is accepted, how that turns out.

15           Of course, Your Honor, as Oracle recognized,

16   it's possible we could get no result and -- well, I strike

17   that.

18           Even if Oracle were to prevail.  Yes.  Even if

19   Oracle were to prevail on the inter partes review, claims

20   from all but one patent that are asserted now would survive.

21   Inter partes review is limited to invalidity under Section

22   102 and 103.  So it's not going to deal with any

23   noninfringement defenses.  It's not going to deal with 112

24   issues.  It's not going to deal with best mode, written

25   description, anything of that nature.  So it's not going to

1    simplify the issues before the Court, certainly not enough

2    to justify the burden imposing a stay would place on

3    Clouding.

4         And I just want to address the point because

5    Clouding is a non-practicing entity that it suffers no

6    prejudice because it can get monetary damages.

7         Although that is certainly where a majority

8    of the courts have viewed the prejudice analysis for

9    non-practicing entities, I would urge the Court to consider

10   that a non-practicing entity's primary business is licensing

11   its patents.

12        A license, as I mentioned when we moved, when we

13   were discussing the motion to dismiss is far more valuable

14   if Clouding has the ability to exclude competitors of its

15   licensees from the marketplace, that analysis, or at least

16   to bring those damages claims sooner, because I think Oracle

17   misunderstands our royalty-free license argument.

18        For the four years, two years, whatever year

19   period while the stay is in place, Oracle will be paying

20   nothing to Clouding.  So if Clouding has a licensee who is

21   going to be paying X amount of dollars more during that time

22   period, Oracle is not going to be paying that.  And that is

23   prejudicial.  That makes it harder to license, and it makes

24   the licenses less valuable.

25        I want to be clear.  I don't believe that

1   Clouding argued that the filing of an inter partes review

2   was, in and of itself, prejudicial.  I think what we're

3   arguing is that staying this case and Clouding's ability

4   to enforce its patent rights pending an inter partes review

5   is what is prejudicial.

6          It's true that the inter partes review has been

7   filed.  That is, to use Mr. Lumish's, I believe as he

8   characterized, wrong expression, "that is water under the

9   bridge" but that is not prejudice.  And the fact we may have

10  licensed after that file has no impact.  It's if the case is

11  stayed, that presents the prejudice, not simply the filing

12  of the IPR.  So I just wanted to clarify that point.

13         There is no real risk, Your Honor, of

14  inconsistent rulings because the Patent and Trademark Office

15  rulings do not moot, outweigh, or override this Court's

16  decision, so even if the Court were to, this Court's

17  decision would prevail.

18         I think it is worth noting the status of the

19  proceedings in comparison to each other.  Well, certainly

20  this case is moving along.  The parties have invested a

21  substantial amount of time in a scheduling order.  We've

22  been negotiating a protective order that I believe is

23  largely complete or at least largely ready to have discrete

24  disputes submitted to Your Honor for approval.

25         Clouding has served and received discovery

1   responses.  Clouding has extended some of defendants'

2   discovery responses, the time for defendants as a courtesy.

3   But I think we need to be careful because it is a nice

4   practice in this District of courtesy extensions.  I think

5   it helps the parties, I think it helps the Court.  And if

6   the Court overemphasizes or the parties overemphasize the

7   status of the proceedings, I think what we'll start to see

8   is no extensions or very few extensions granted, and I

9   think that will make what is a very pleasant litigation

10  environment in our court somewhat more contentious

11  unnecessarily because plaintiffs, concerned about weighing

12  the stage of the proceedings against motions for stay

13  pending reexam, might not be inclined or might be less

14  inclined to grant courtesy extensions that I think are

15  appropriate in many circumstances.

16          And I think when considering the status of the

17  litigation, we also need to take a look at the status of the

18  IPR proceedings.  And they have not even yet been accepted.

19  We don't know whether they will, although I think the

20  statistics favor Oracle on that point.  But as of today

21  they're not, and we don't think a stay is appropriate in

22  light of that.

23          THE COURT:  And you think it will take until

24  June of this year before we know.

25          MR. BRAUERMAN:  We do.  We think Clouding has

1    three months to respond and address it.  It is a broad

2    challenge given the number of patents asserted.  I think it

3    is unreasonable and unfair to expect that Clouding would

4    waive or give up its rights and to expect Clouding to do

5    that.  Certainly, no one expected defendants to take less

6    than the time they were allotted to analyze the complaint or

7    address the complaint.  I think it's unfair to suggest that

8    Clouding could move this forward so it might go even quicker

9    by sacrificing its rights.  It takes times, these are

10   serious proceedings, they have serious consequences; and I

11   think it will take three months.

12           Clouding has three months to respond, and then

13   there is three months for the PTO to consider.  So they were

14   filed at the end of December.  I'm not sure the volume at

15   the PTO but I think six months is a reasonable estimate

16   before we have a decision on that.

17           THE COURT:  And then if we go forward 12 months,

18   if we are optimistic and we get it done in 12 months, tell

19   me your understanding as to where, in June 2014, where this

20   case would be if we don't stay.

21           I think you said you are required to reduce the

22   asserted claims to 40 in September of this year.  We fast

23   forward another nine months from there.  Give me a reminder

24   as to where this case is likely to be.

25           MR. BRAUERMAN:  Yes, that's correct, Your Honor.

1    So we will have completed discovery and fact discovery in

2    February of 2014.  I believe that the Court did set a claim

3    construction date, although I may be -- yes.  We'll be doing

4    claim construction issue identification in September of

5    2013.  The joint claim chart will be submitted to the Court

6    at the end of 2013.  Briefing.  We have a hearing on claim

7    construction by December of 2013.  Case dispositive motions

8    would be due after, so on October 2014.

9            Your Honor, we have completed the claim

10   construction process.  Presumably Your Honor would be in the

11   process of deciding the claim terms by February 2014.  We

12   would be into expert discovery and fairly far along, well

13   past the point where this Court generally considers stays

14   absent extraordinary circumstances.  So I think that also

15   counsels against staying this case.

16           The early stage of the litigation doesn't

17   justify a stay.  There have been a number of decisions of

18   this Court denying stays that were further, where the case

19   was not as far along as we are here.

20           And I just wanted to see ... (pause.)

21           I believe I have addressed.  The final point I

22   wanted to make.  The primary case Oracle relies on, the *SEL*

23   case, that is different than the situation we have here

24   because of three points:

25           One, all of the asserted claims in that case

1   were under review.  There were no limits in the scheduling

2   order on the number of claims that could be asserted, and

3   that limitation really takes away any potential prejudice

4   Oracle could suffer.

5           They made no effort to show, as the *Cooper*

6   *Notification* case stated, any prejudice.  Well, that is

7   certainly not dispositive.  They made no arguments about

8   any prejudice they might suffer to go forward.  And,

9           Then, third, the defendants agreed to be bound

10  by the estoppel, so there were real simplification gains.

11  Here, none of those issues are present.

12          Unless Your Honor has any questions?

13          THE COURT:  Just a couple more.

14          There is argument about I guess discovery now

15  as part of the inter partes review process.  So defendant

16  raises a concern there will be duplicative discovery if I

17  don't enter a stay.  Are they right about that?

18          MR. BRAUERMAN:  I don't believe so.  It is

19  going to be certainly the same discovery, but if they're

20  producing it in one forum, they wouldn't need to go through

21  the ministerial task of producing it twice.  They are going

22  to need to provide that, whether it's in District Court

23  litigation or inter partes review litigation, and once that

24  is provided they will only need to do that once.

25          I don't think that will be -- I really don't

1  see that argument.  I don't think there will be any burden.

2  And even if they were accurate that that was prejudicial, I

3  don't think that rises to the level of prejudice that would

4  justify a stay here.

5         THE COURT:  A factor that I have considered

6  is whether the patentee is willing to agree not to seek

7  amendment of claims.  Is that something your client is

8  prepared to make any commitment on?

9         MR. BRAUERMAN:  I'm not in a position, Your

10  Honor, to make a representation to the Court either way.  I

11  will note that the claims cannot be expanded in inter partes

12  review.  So while it is possible that they could be amended,

13  and I'm not in a position to make a representation to the

14  Court today that they would not, although that is certainly

15  something my client is clearly considering, we don't think

16  that should be dispositive.

17         THE COURT:  Do you know what the timing of any

18  proposed amendments would have to be?  Is it within that 12

19  month time frame?

20         MR. BRAUERMAN:  My understanding is that it

21  would be in the 12 month time frame between when the inter

22  partes review was accepted.  Obviously, Clouding did not

23  move for inter partes review, so it's not under any

24  obligation to propose any amendments, and if the review were

25  not granted, I wouldn't expect it to propose any.  So

1   although I don't prosecute patents, it is my understanding

2   that it would be during the 12 month period when the --

3   essentially, the 12 to 18 month period, I'll say, from when

4   the inter partes review was initiated to when it's

5   completed.

6            THE COURT:  Is there anything else?

7            MR. BRAUERMAN:  No, Your Honor.  Not unless Your

8   Honor has any more questions.

9            THE COURT:  Not anymore.  Thank you.

10           MR. BRAUERMAN:  Thank you, Your Honor.

11           THE COURT:  Is there any rebuttal?

12           MR. LUMISH:  Thank you, Your Honor.  On the

13  point that the reexamination, inter partes review and the

14  stay wouldn't simplify anything.  I would like to respond

15  to that briefly.

16           One of the major arguments to support that is

17  there are other issues that still exist.  There would still

18  be noninfringement.  There would still be damages, things

19  like that.

20           I start with the fundamental principle for the

21  idea that simplification is valuable and achievable for a

22  stay doesn't mean it should resolve every issue in the

23  lawsuit.  That is inconsistent with the whole point of the

24  stay and the parallel proceedings on invalidity.

25           I depart a little bit from the case law here,

1    but the noninfringement issues, the damages issues, all

2    of those things are simplified by the inter partes review

3    because they won't have to occur for invalid claims and the

4    noninfringement analysis won't have to be redone on a claim

5    that has been amended.  And so even though there are these

6    other issues that aren't invalidity, per se, I think the

7    simplification does still help out or they are still

8    simplified, I should say, by the inter partes review

9    process.

10            It's a significant waste, and it is significant

11   prejudice to Oracle.  We were told we haven't articulated

12   any prejudice.  I disagree.  There is significant prejudice

13   to Oracle to litigate claims that are ultimately found to be

14   invalid, to formulate infringement defenses and produce

15   discovery and submit expert reports potentially and argue

16   Markman to Your Honor on claims that aren't going to be in

17   the same form post-IPR.  You didn't hear any dispute that

18   the statistics say that is likely for many of the claims, if

19   not most.

20            If what he meant by simplifying the other

21   issues that still exist, that what Clouding means is there

22   are still other claims that will remain in the case, they

23   didn't identify a single claim that will be asserted against

24   Oracle in this lawsuit that is not presently in the IPR

25   review by the Patent Office.  And I think that is important.

1                    The simplification question.  I don't think

2     there is any question that there would be simplification.

3     It is exceedingly likely claims will be amended or canceled.

4     We talked about that.  And Your Honor heard Clouding concede

5     that it hasn't yet stipulated and it's not in a position to

6     stipulate that it won't seek amendments, and the Court has

7     credited that in determining stay motions.

8                    Leaving that aside, there is expert guidance

9     from the Patent Office that the Court has recognized is

10    valuable to the Court and that helps to streamline the

11    issues.

12                   Mr. Brauerman presented that as a problem, as

13    the opposite of simplification, because it's a larger

14    prosecution history, but that's not the way the courts have

15    looked at it.  In fact, leaving aside the claim construction

16    implications that go along with the file history, it could

17    create doctrine of equivalents estoppels under *Festo* and it

18    can create other issues that relate to noninfringement.

19                   Third, as far as simplification goes, Oracle

20    will be estopped.  Unlike in the reexamination analysis

21    where maybe there is estoppel, maybe there is not, when it

22    is going to take place given the appellate process, estoppel

23    is guaranteed under the IPR process upon the final decision

24    of what is called the PTAP, the body that will decide the

25    inter partes review.

1           So if it's a 12 or 18 month cycle, at the end

2    of that will be an order.  And to the extent that Oracle

3    submitted 102 and 103 arguments based on specific prior art

4    references, it cannot repeat the arguments here in court.

5    That is a simplification that is valuable to the Court at

6    frankly Oracle's expense.

7           Last, I'd like to address prejudice.  I have

8    already talked about prejudice to Oracle, but on the

9    prejudice to Clouding there is four factors as Mr. Brauerman

10   mentioned.

11          One is the timing of the reexaminations here in

12   inter partes review.  I think that tips in Oracle's favor

13   very heavily.  They were brought early in the case.  They

14   were brought before anything significant had happened.  They

15   were brought four months after the amended complaint.

16          Second factor is the timing of the motion for

17   the stay.  That was brought one week later.  That tips in

18   favor of Oracle.

19          Third is the status of the reexaminations.

20   There is not much to point out there, but there is nothing

21   negative that has happened to Oracle either.  There has been

22   no certifications of claims in Clouding 's favor, so I think

23   that one is probably neutral.  And,

24          Then the last the four factors on prejudice is

25   the relationship between the parties.  And, again, we have

1    noncompetitive companies and one is not practicing the

2    patent.

3              So when you look at the prejudice factors, I

4    think it's overwhelmingly in Oracle's favor that there is no

5    prejudice here that would preclude a stay.

6              And with that, I submit on the papers, unless

7    Your Honor has further questions.

8              THE COURT:  No.  Thank you very much.

9              MR. LUMISH:  Thank you.

10             THE COURT:  We're going to take a recess until

11   at least 12:30.  I'll be back as close to 12:30 as I can to

12   let you know if I can give you any rulings at this time, but

13   you are free to go until 12:30.

14             We will be in recess.

15             (Brief recess taken.)

16             *     *     *

17             (Proceedings reconvened after recess.)

18             THE COURT:  All right.  Well, I am not able to

19   make any ruling on the motion to dismiss at this time.  We

20   will take that under advisement, but I am able to give you

21   my ruling on Oracle's motion to stay.

22             That ruling is that the motion is denied.  And I

23   want to explain the reasons why.

24             First, as the parties agree, and I do as well,

25   this presents a discretionary decision for the Court.  And

1    while there is no clear law yet that I'm aware of as to what

2    standard should be applied given the novelty of a request

3    for inter partes review, I do agree with the parties that

4    the appropriate guidance at this point is provided in the

5    cases that assessed motions to stay pending a reexamination.

6    And so those are the factors that I have primarily relied

7    upon and considered in reaching my decision today.  Those

8    are the three factors that are typically considered.  And

9    let me address them now.

10                   First, I have considered whether the stay as

11   requested will simplify the issues for trial.

12                   There, there certainly is some significant

13   likelihood of some significant simplification as the inter

14   partes review could result in invalidation or at least

15   amendment of approximately one-third of the claims of the

16   patents in suit, including those claims that Oracle at this

17   point believes in its best judgment are most likely to be

18   claims that end up being asserted as we proceed in this

19   case.

20                   All of that potential for simplification is

21   assuming that the IPR is granted, and I'll address that a

22   little a little bit more in a moment.  So assuming there is

23   IPR review granted, even if no invalidation of claims and

24   no amendment results, the process itself will generate

25   additional prosecution history which I recognize one might

1    view is complicating, but for the most part I would view

2    that as potentially creating simplification, at least giving

3    the Court more information that it might rely on.

4              Also, there is the estoppel effect as to Oracle

5    which also could aid and simplify the litigation.

6              I have also here considered as well the fact

7    that, at this time, the patentee is not willing to forfeit

8    its right to seek amendment of claims if the IPR is granted.

9    So only a stay could prevent the further complicating

10   potential of parties taking discovery, arguing Markman, the

11   Court potentially construing claims, all relating to claims

12   that ultimately end up being amended or rejected as part of

13   the IPR.

14             So for all of those reasons, I do recognize some

15   significant likelihood of some significant simplification if

16   the stay is granted.

17             On the other hand, it is true that here, given

18   there are so many patents asserted and they have so many

19   claims, that no inter partes review is even requested as

20   of now for two-thirds of the claims, meaning that at this

21   point the Court has to conclude that there will be, as a

22   certainty, claims left for the plaintiff to assert against

23   this defendant with respect to at least 10 of the 11 patents

24   in suit.

25             There is also the reality that this case is one

1    of several that are related and proceeding on a coordinated

2    schedule and that the estoppel effect of the inter partes

3    review is lesser or indeed nonexistent for some or all of

4    the defendants in those related cases that are proceeding in

5    a coordinated fashion with this one.

6            So when I weigh all that together, on just this

7    first factor on whether a stay is likely to simplify the

8    issues for trial, I conclude that the factor overall does

9    weigh in favor of a stay but does so only slightly.

10            That takes me to the second factor, which is

11   sometimes described as whether discovery is complete and

12   whether a trial date has been set but is more generally a

13   consideration of the status of the litigation and that

14   status relative to the status of the, in this case, inter

15   partes review.

16            There, it is true that the case, the litigation

17   is in its earliest stages.  Discovery is just beginning.

18   And consistent with my practice, I have not set a trial

19   date.  That is true.  However, I have entered a schedule,

20   indeed a coordinated schedule which required some investment

21   of resources of the parties and the Court.  And as we all

22   know, we prepared for the motion to dismiss argument and

23   have now heard that argument and taken that motion under

24   advisement.  So, again, some significant judicial resources

25   have been invested in this and in the related matters already.

1            Notably here I think is the fact that the

2     schedule provides for meaningful relatively early reduction

3     of asserted claims.  The plaintiffs are required to reduce

4     those claims to 40 prior to the Markman and to 20 prior to

5     trial.  And so that, plus the ordinary procedures of

6     discovery, will force this case down to a manageable size

7     on a reasonable time frame.

8            Moreover, as I have already alluded, this is

9     only one of multiple related cases proceeding in a

10    coordinated fashion.  So while defendant is I think, for

11    better or worse, right that piecemeal litigation is to some

12    extent inevitable with respect to these cases, there is

13    piecemeal and then there is more piecemeal, and I think that

14    a stay of just one out of the related coordinated cases

15    would exacerbate and increase the degree of piecemealedness,

16    for lack of a better word.  That is something I have

17    considered.

18           When I compare the status of the litigation to

19    the status of the inter partes review, I find that the inter

20    partes review is in its earliest stages.  Indeed, you could

21    characterize it as in the pre-infancy stage.  The PTO has

22    not yet decided whether even to proceed with the inter

23    partes review of any of the patents in suit and won't likely

24    make such a determination until around June of this year.

25           Then, while none of us know for sure, it seems

1    likely that the PTO will take until at least between June of

2    2014 and December of 2014 to make its decision on the inter

3    partes review.  That is subject to appeal, but I have not

4    factored in the time for appeal since defendant at this time

5    is not seeking a stay pending appeal.

6           But even just looking at the June 2014 endpoint

7    which is the best case scenario in the Court's view for when

8    the inter partes review would be done, by that point, when I

9    look at the schedule that we have imposed here, we will be

10   done with fact discovery, we will be six months post the

11   Markman hearing, perhaps we will have a Markman ruling out

12   by then, and we'll be nearing the time for filing of the

13   case dispositive motions.

14          So overall, when I look at the status of the

15   litigation factor, while it is true that the litigation is

16   at its earliest stage, the inter partes review is at the

17   earliest stage so overall this factor weighs against the

18   stay.

19          The next factor is whether a stay would unduly

20   prejudice the plaintiff or present a tactical disadvantage

21   to the plaintiff.

22          Here, I think this presents a close call, but I

23   believe that it would in fact create those prejudices and

24   risk of tactical disadvantage to the plaintiff.  It would, I

25   think we all agree, deprive the plaintiff of its chosen

1    forum for determining the validity of its patent.  It would

2    put on hold the plaintiff's claim for infringement,

3    including willful infringement, and its opportunity to

4    obtain relief for any infringement that it might prove.

5    It would leave hanging out there issues of inequitable

6    conduct, other invalidity defenses that are not amenable to

7    resolution in the inter partes review and other potential

8    equitable issues like laches.

9            So in these ways, the Court accepts the

10   plaintiff's contention that a stay would make it harder to

11   obtain licenses, would make the licenses that have already

12   been granted to licensees less valuable, thereby harming the

13   licensees of the plaintiff, and would make settlements on

14   terms favorable and desirable to the plaintiff less likely.

15   That is, a stay would work all of that potential harm.

16           So while the parties, it's true, are not

17   direct competitors, and it does appear that the harm to

18   plaintiff would be compensable with money, including

19   interest, there is, in the Court's view, some significant

20   risk of significant prejudice to the plaintiff from the

21   delay that would follow from a stay.

22           Also, I do think there is the possibility that

23   there could be a tactical disadvantage to the plaintiff from

24   the delay, including from the risk that memories might fade.

25   So this factor overall weighs against a stay.

 1              I have also considered, as courts sometimes do,

 2    whether there is any undue prejudice to the defendant from

 3    the denial of the stay.  And while certainly there is some

 4    prejudice to the defendant from denial of the stay, nothing

 5    that has been articulated here as prejudice goes beyond what

 6    ordinarily and I suppose necessarily comes with being a

 7    defendant in a patent infringement lawsuit.  Nothing

 8    particularly undue or extraordinary has been articulated or

 9    certainly shown in the way of prejudice to the defendant

10    from denial of the stay.

11              So in the Court's view, that confirms the

12    Court's conclusion that the overall balance of factors,

13    while not strongly favoring either side, does favor the

14    plaintiff enough such that the most appropriate exercise

15    of my discretion I believe and hereby do order is to deny

16    the requested stay.  So that's the Court's ruling on that

17    motion.

18              Are there any questions about the ruling from

19    the defendant?

20              MR. LUMISH:  No, Your Honor.

21              THE COURT:  And from plaintiff?

22              MR. BRAUERMAN:  No, Your Honor.

23              THE COURT:  Is there anything further at this

24    time?

25              MR. LUMISH:  Not from us.

1          MR. BRAUERMAN:  Not from us.  Thank you, Your

2     Honor.

3          THE COURT:  Thank you.  Have a nice weekend.  We

4     will be in recess.

5               (Hearing ends at 1:00 p.m.)

6

7        I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

8

9                         /s/ Brian P. Gaffigan
                        Official Court Reporter
10                        U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25